2009R01422/ADL/JTE

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA     :     Criminal No. 13-$\cancel{307}$
                             :
          v.                 :
                             :
                             :     18 U.S.C. § 371
PETER BREIHOF                :

## I N F O R M A T I O N

The defendant having waived in open court prosecution
by indictment, the United States Attorney for the District of New
Jersey charges:

1.  At all times relevant to this Information:

    a.  Biodiagnostic Laboratory Services, LLC
("BLS") was a clinical blood laboratory headquartered in
Parsippany, New Jersey that, among other things, performed tests
on the blood specimens of patients referred to BLS by doctors,
and then billed payors and others for those tests and related
services.

    b.  Defendant PETER BREIHOF worked for BLS.

    c.  Co-conspirator DN was an owner and the
President of BLS, and generally directed and supervised defendant
PETER BREIHOF's activities at BLS.

    d.  The Medicare Program ("Medicare") was a
federal program that provided free or below-cost health care
benefits to certain individuals, primarily the elderly, blind,
and disabled.  Medicare was a "Federal health care program" as

defined in Title 42, United States Code, Section 1320a-7b(f) and a "health care benefit program" as defined in Title 18, United States Code, Section 24(b). Individuals who receive benefits under Medicare are commonly referred to as "beneficiaries."

   e. The Medicare Part B program was a federally funded supplemental insurance program that provided supplementary Medicare insurance benefits for individuals aged sixty-five or older, and certain individuals who are disabled. The Medicare Part B program paid for various medical services for beneficiaries, including blood tests and related services.

   f. BLS was an approved Medicare provider, and Medicare paid BLS for performing blood tests and related services on beneficiaries who were referred to BLS by physicians participating in Medicare.

   g. Horizon Blue Cross/Blue Shield ("Blue Cross/Blue Shield") was a corporation in the business of providing health care insurance to individuals and entities under various insurance policies (the "insureds"), pursuant to which Blue Cross/Blue Shield paid BLS for blood tests and related services performed for insureds who had been referred to BLS by physicians participating in the Blue Cross/Blue Shield provider network.

- 2 -

## The Conspiracy

2.  From at least in or about January 2006 until in or about the fall of 2009, in Morris County, in the District of New Jersey, and elsewhere, defendant

PETER BREIHOF

did knowingly and intentionally conspire and agree with co-conspirator DN and others to commit offenses against the United States, that is:

    a. to knowingly and willfully offer and pay remuneration, directly and indirectly, overtly and covertly, in cash and in kind, that is, kickbacks and bribes, to physicians in order to induce referrals of patients to BLS for the furnishing and arranging for the furnishing of items and services, that is, the referral by physicians of patient blood specimens to BLS for testing and related services, for which payment was made in whole or in part under a Federal health care program, that is, Medicare, contrary to Title 42, United States Code, Section 1320a-7b(b)(2)(A); and

    b.  to knowingly and intentionally use and cause to be used the mail with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, that is, commercial bribery, contrary to N.J.S.A. §2C:21-10 and Title 18, United States Code, Section 1952(a)(3) and, thereafter, to

- 3 -

perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of such unlawful activity.

## Object of the Conspiracy

3.  The object of this conspiracy was for defendant PETER BREIHOF, co-conspirator DN, and others to obtain millions of dollars of additional revenue and profits by paying kickbacks and bribes to physicians for the referral of blood specimens from their patients to BLS for testing and related services, which testing and related services BLS would then bill for and use to obtain payment from Medicare, Blue Cross/Blue Shield, and other payors.

## The Manner and Means of the Conspiracy

4.  It was a part of the conspiracy that one or more of the co-conspirators caused bribes from BLS to be paid to one or more physicians through the use of sham Facility Use and Service Agreements (the "Sham Agreements"), which were intended to conceal the illegal nature and purpose of those bribes.

## Overt Acts

In furtherance of the conspiracy and in order to effect the objects thereof, the defendant PETER BREIHOF and his co-conspirators committed or caused the commission of the following overt acts in the District of New Jersey and elsewhere:

5.  In or about February 2009, defendant PETER BREIHOF

- 4 -



caused a check to be delivered to DF, a physician then practicing medicine in the State of New Jersey, which was paid to induce DF to refer the blood specimens of DF's patients to BLS for testing and related services. The check, bearing #7549, was drawn on a BLS account in the amount of $3,466 and signed by co-conspirator DN.

6.    In or about February 2009, co-conspirator DN caused a check to be delivered to FS, a physician then practicing medicine in the State of New Jersey, which was paid to induce FS to refer the blood specimens of FS's patients to BLS for testing and related services. The check, bearing #7589, was drawn on a BLS account in the amount of $5,400 and signed by co-conspirator DN.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATION

1.    The allegations contained in this Information are hereby realleged and incorporated by reference for the purpose of noticing forfeiture pursuant to Title 18, United States Code, Section 982(a)(7).

2.    Upon conviction of the offense contrary to Title 42, United States Code, Section 1320a-7b(b)(2)(A) and Title 18, United States Code, Section 1952(a)(3), in violation of Title 18, United States Code, Section 371, the defendant, PETER BREIHOF, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), all right, title, and interest in the sum of $1,179,556, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the offense of conviction.

3.    If any of the property described above, as a result of any act or omission of the defendant:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty, the United States shall be

entitled, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(a)(7), to forfeiture of any other property of the defendant, PETER BREIHOF, up to the value of the property described in the preceding paragraph.


_____
PAUL J. FISHMAN
UNITED STATES ATTORNEY

CASE NUMBER:

# United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

PETER BREIHOF

# INFORMATION

18 U.S.C. §371

## PAUL J. FISHMAN
*U.S. ATTORNEY NEWARK, NEW JERSEY*

ANDREW LEVEN
JACOB T. ELBERG
*ASSISTANT U.S. ATTORNEYS*
*NEWARK, NEW JERSEY*
973.645.2700